UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BORIS ODYNOCKI** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-1733** |
| **SOUTHERN UNIVERSITY AT NEW ORLEANS ET AL.** | **SECTION: "S" (3)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Boris Odynocki's motion for partial summary judgment on his claim that the defendants violated his constitutional rights under the Due Process Clause is **DENIED**.  (Document #33.)

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment on Boris Odynocki's due process claim, pursuant to 42 U.S.C. § 1983, and the state law claims in tort and for breach of contract is **GRANTED**, and the claims are **DISMISSED WITH PREJUDICE**.  (Document #57.)

### I. BACKGROUND

Boris Odynocki, a tenured member of the faculty in the Social Sciences Department of Southern University at New Orleans (SUNO) since 1986, was furloughed as a result of the closure of the SUNO campus due to the destruction caused by Hurricane Katrina.  When  Dr.

Odynocki reported to work at Southern University's Baton Rouge campus on October 5, 2005, Dr. Charles Williams, the Vice-Chancellor for Academic Affairs, explained that Dr. Odynocki would receive his salary for the month of October if he obtained a job assignment from the Chair of the Sociology Department at the Baton Rouge campus.  Unable to locate Dr. Efesoa-Mokosso, the Dean of Arts and Social Sciences of SUNO, Dr. Odynocki received an assignment from Dr. Christopher Hunte, the Chair of Sociology at the Baton Rouge campus, to conduct urban research in relationship to the future of New Orleans.

At the end of October when he did not receive his monthly paycheck, Dr. Odynocki called the Office of Human Resources and learned that Dr. Efesoa-Mokosso had reported that Dr. Odynocki had no work assignment.  On November 2, 2005, Dr. Odynocki attempted to show Dr. Efesoa-Mokosso his work assignment, but Dr. Mokosso refused to look at it and directed Dr. Odynocki to Dr. Robert Gex, the interim chancellor of SUNO.[1]  Dr. Gex also refused to approve the assignment from Dr. Hunte or any other assignment and would not release Dr. Odynocki's paycheck.

On December 1, 2005, Dr. Odynocki received a letter from Dr. Gex informing him that he had been furloughed effective October 1, 2005.  Dr. Gex advised that the Board of Supervisors had been dealing with serious financial problems due to the devastation caused by Hurricane Katrina.  Students had been displaced, and classes had been canceled for the fall semester of 2005.  Those employees without approved work assignments were furloughed in

---

[1] Dr. Gex resigned as chancellor effective December 31, 2005.  Dr. Victor Ukpolo was appointed to serve as chancellor.  Dr. Gex is now deceased.

order to avoid a layoff and to allow them to continue to be entitled to certain benefits such as health insurance. Those furloughed employees were placed on leave without pay when the State's approved Special Leave for SUNO's employees ended.

Dr. Odynocki filed a complaint against SUNO; Dr. Gex in his official and individual capacities; the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, the entity that manages SUNO (the Board); Johnny G. Anderson, Chairman of the Board of Supervisors of SUNO in his official and individual capacity; Myron K. Lawson, Vice-Chairman of the Board of Supervisors of SUNO, in his official and individual capacity; and sixteen members of the Board of Supervisors of SUNO in their official capacities, pursuant to 42 U.S.C. § 1983 and state law.

Dr. Odynocki alleges that he was terminated from his employment with SUNO without due process, there was no legitimate basis for firing him, he was terminated in retaliation for filing prior lawsuits,[2] and SUNO breached its contract and the terms of his tenure by retaining probationary and untenured members of the faculty and furloughing a tenured professor. Dr. Odynocki seeks compensatory damages, reinstatement with back pay and benefits, punitive damages, and attorney fees and court costs.

Dr. Odynocki filed a motion for partial summary judgment, and the defendants filed a motion to dismiss and, alternatively, for summary judgment.

## II. DISCUSSION

---

[2] Dr. Odynocki states that he intends to request to amend his complaint to add a retaliation claim under Title VII. According to this court's scheduling order, the time for amending the pleadings has expired, and the trial is set for November 27, 2006.

3

### A. Legal standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  A fact is "material" if its resolution in favor of one party might affect the outcome of the lawsuit.  Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  Id.  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case.  Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### B. Due process claim under 42 U.S.C § 1983

Dr. Odynocki contends in his motion for partial summary judgment that the defendants deprived him of a property right in his tenured position without due process.  He argues that he was terminated without just cause and without any advance notice of termination.

"[I]n § 1983 suits alleging a violation of the Due Process Clause of the Fourteenth

Amendment . . . [p]laintiffs must (1) assert a protected `liberty or property' interest and (2) show that they were deprived of that interest under color of state law." Doe v. Rains County Ind. School Dist., 66 F.3d 1402, 1406 (5th Cir. 1995).  "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits."  Board of Regents of State Colleges v. Roth, 92 S.Ct. 2701, 2708 (1972).  To have a property interest in a benefit, a person must "have a legitimate claim of entitlement to it."  Id. at 2709.

The Due Process Clause provides that the right to property cannot be deprived except pursuant to constitutionally adequate procedures.  See Cleveland Bd. Of Educ. V. Loudermill, 105 S.Ct. 1487 (1985).  "[T]he due process clause does not require that a formal, adversarial hearing precede every decision affecting property."  Wozniak v. Conry, 236 F.2d 888, 890 (7th Cir. 2001).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  Morrissey v. Brewer, 92 S.Ct. 2593, 2600 (1972).  "[W]here a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause.  Gilbert v. Homar, 117 S.Ct. 1812 (1997).   The Supreme Court has adopted a balancing of interests approach to determine what form of hearing is required prior to administrative action.  See Loudermill, 105 S.Ct. at 1495.  The dictates of due process require consideration of three factors:

> First, the private interest that will be affected by the official action; second, the
> risk of an erroneous deprivation of such interest through the procedures used, and
> the probable value, if any, of additional or substitute procedural safeguards; and
> finally, the Government's interest, including the function involved and the fiscal
> and administrative burdens that the additional or substitute procedural

requirement would entail.

Matthews v. Eldridge, 96 S.Ct. 893, 903 (1976).

Dr. Odynocki's status as a tenured faculty member at SUNO is uncontested,  Because of his status, he has a property interest in continued employment with SUNO.  See Roth, 92 S.Ct. at 2709.  On November 18, 2005, the Board of Supervisors approved the "Force Majeure Policy of SUNO."[3]  Defendants' exh. E.  The Board of Supervisors recognized that "the traditionally most protected academic employees of a higher education institution" would be affected, and provided procedures for notification and review.  Id.  Dr. Odynocki did not receive a hearing prior to being furloughed without pay effective October 1, 2005, but it is uncontested that he was afforded a hearing before Vice-Chancellor Rose Duhon-Sells on February 24, 2006, and was accompanied by counsel.  Following the hearing, a decision was issued upholding the furlough.  The question is whether this satisfied the procedural protections that the constitution requires under this particular situation.

Without question, Dr. Odynocki's private interest in maintaining his position and continuing to receive his paycheck was affected by the official action.  However, the governmental interest in reducing fiscal and administrative burdens when Hurricane Katrina devastated the City of New Orleans was substantial.  Governor Blanco issued Proclamations and Executive Orders suspending regulatory statutes, orders, rules or regulations if they impeded

---

[3]  "This Force Majeure Exigency Plan shall be limited to responding to the circumstances arising out of the catastrophic destruction caused by Hurricane Katrina, and for that purpose this Plan shall supplement and supercede any conflicting provisions of the Regulations of the Board of Supervisors."  Defendants' exh. E. at 5.

addressing the emergency, pursuant to La. Rev. Stat. 29:721 *et seq*.  Defendants' exh. A.  On November 5, 2005, the Governor issued an order, which included all higher education institutions, that expenditure reductions be instituted.  Defendants' exh. B.

In accordance with the Governor's Executive Order and the Board of Supervisors Resolution, "General Notice of Impending Layoff Avoidance Measure Faculty/Unclassified Employees" was given on November 21, 2005.  Plaintiff's exh. 1c.  The notice states that the furloughing of certain faculty and unclassified employees as a layoff avoidance measure would be implemented due to an inability to continue to pay salaries following Hurricane Katrina.  Id.  "The System President and Board ratified and approved the furlough plan, effective October 1, 2005, and lasting until such time as furloughed employees are recalled or laid off."  Id.

The Board of Supervisors developed a procedure to identify courses that would be offered and the best use of resources to serve a diminished student body.  The Board of Supervisors determined, *inter alia*, that a "full load of combination work assignments that equals full time employment" was part of the criteria for continued employment.  Defendants' exh. J.  Although Dr. Odynocki presented a project to Dr. Hunte for approval, he did not obtain the necessary signatures for approval on the assignment form from the Dean, the Vice Chancellor, and the Chancellor.  Defendants' exh. L; plaintiff's exh. 1a.  Because of that failure, Dr. Odynocki was included in those "employees without approved work assignments," who were placed on leave without pay status.  Plaintiff's exh. 1c.

After balancing the three factors, the court concludes that SUNO's interest in safeguarding the future of the University by acting quickly in implementing procedures to

relieve the fiscal and administrative burdens as ordered by the Governor following Hurricane Katrina outweigh Dr. Odynocki's private interest that was affected by the Force Majeure policy and resulting furlough policy adopted by SUNO. Because the circumstances after Hurricane Katrina were critical and pressing, a predeprivation process was not feasible, and the postdeprivation process implemented by SUNO satisfies the Due Process Clause.

Accordingly, assuming *arguendo* that the "furlough" constituted a deprivation of Dr. Odynocki's property right, the postdeprivation procedures were constitutionally adequate. There are no genuine issues of material fact, and the due process claim is dismissed as a matter of law.[4]

## C. State law claims

Dr. Odynocki alleges state law claims for tort damages based on wrongful termination in retaliation for filing prior lawsuits and breach of contract. The defendants contend that any actions against the State of Louisiana for monetary damages in federal court are barred under the Eleventh Amendment.[5] Dr. Odynocki responds that the Eleventh Amendment does not bar claims for prospective relief against government entities; therefore, the remedy of reinstatement to his former position of tenured professor is available. Dr. Odynocki agrees that the claims for

---

[4] Because the postdeprivation procedures were constitutionally adequate, the court does not discuss the issues of Eleventh Amendment and qualified immunity.

[5] The Eleventh Amendment, which is a bar to the jurisdiction of the federal court, "is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity." Hans v. Louisiana, 10 S.Ct. 504, 506 (1890). The Eleventh Amendment provides:
> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

punitive damages against the "government entities" and the individual defendants in their official capacities are barred.

### 1. Tort damages for wrongful termination

The defendants argue that summary judgment is proper on the tort claim for wrongful termination because Dr. Odynocki has not established that he was terminated. The defendants contend that Dr. Odynocki was placed on furlough, a state recognized action in lieu of termination, and that the Board did not declare financial exigency, but imposed a "Force Majeur" policy in order to avoid financial exigency and terminations.

The evidence establishes that, in implementing the procedures for modifying what positions were needed, the Board of Supervisors of SUNO defined the following terms:

> (1) "Furlough" means the employee is placed on temporary leave without pay status before the end of the employee's contract term; (2) "Lay-off" means the employee is temporarily dismissed before the end of the employee's contract term; (3) "Terminate" means the employee is permanently separated from the institution. Both furloughs and lay-offs may lead to eventual termination.

Defendants' exh. E at 3(b). The letter from Dr. Gex to Dr. Odynocki informed that Dr. Odynocki had been furloughed effective October 1, 2005. Although Dr. Odynocki refers to the furlough as a termination, he has not produced any evidence of termination in order to show that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 106 S.Ct. at 2552. Accordingly, there are no genuine issues of material fact, and the defendants' are entitled to judgment as a matter of law dismissing the state law tort claims against the Board and the individual defendants in their official and individual capacities.

### 2.  Breach of contract

Dr. Odynocki alleges in his complaint and amended complaint that he "sues for breach of contract and terms of his tenure."[6] He alleges that the contract was breached because he was fired without cause because he tried to get a replacement assignment, he was fired for financial exigency without being given priority as a tenured faculty member, and SUNO used Hurricane Katrina as an excuse to fire him in retaliation for his prior lawsuits.

As in the tort claim, the defendants have met the initial burden of establishing that there is no genuine issue that Dr. Odynocki was not terminated, but that he was furloughed. Dr. Odynocki has not met his burden of coming forth with evidence to establish that he was fired or terminated or that a furlough under the criteria implemented by the Board following Hurricane Katrina constituted a breach of contract. Accordingly, there are no genuine issues of material fact, and the defendants' are entitled to judgment as a matter of law dismissing the breach of contract claim against the Board and the individual defendants in their official and individual capacities.

### III. CONCLUSION

Assuming *arguendo* that the furlough constituted a deprivation of Dr. Odynocki's property right in his position, the postdeprivation procedures of notice and a hearing implemented by the defendants satisfy the requirements of the Due Process Clause. Further, Dr. Odynocki has not met his burden of establishing that he was terminated in order to create a

---

[6] Dr. Odynocki contends that SUNO has consented to suit for monetary damages by entering into a settlement agreement in CA No. 00-2802. The enforcement of a previous settlement agreement in another case is not properly before this court. There is no basis to consolidate the cases because the factual and legal issues are not related to this case.

genuine issue for trial on his state law claims in tort and for breach of contract.

Accordingly, there are no disputed issues of material fact, and the defendants are entitled to judgment as a matter of law dismissing the complaint.

New Orleans, Louisiana, this __3rd__ day of November, 2006.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**